Mr. Justice Walker delivered the opinion of the Court. This suit was instituted to set aside certain deeds of trust alleged to have been made in fraud of the rights of the complainant, and to allow her dower in the estate so conveyed. To entitle the complainant to recover, it is indispensably necessary, not only to alleged and prove that such fraud was in fact perpetrated, but it is also equally necessary to show that the complainant had a vested interest in the estate so conveyed] for, although the parties to the deed may have entered into it with the purpose and intent to defraud', yet, unless the rights of the complainant were affected thereby, she should not be heard to complain. In the case of Lightfoofs Ex'rs v. Calgin & wife, 5 Munf. Rep. 71, a question of this kind was presented under circumstances much resembling the one before us. Judge Ronae, in delivering his opinion, said, “Admitting this deed to be clearly fraudulent, does it not cease to be so quoad the appellees, if they have no interest to entitle them to impeach it ? Must there not be two parties before a deed can be considered and set aside as fraudulent, the party defrauding and the party defrauded, and can the last exist unless he has a vested interest ? It is held that by common law, a person having a debt due him, or a right or title to a thing, might avoid a fraudulent conveyance made to deceive or defraud him of that right or debt; but it is said that if the conveyance was precedent to the right or debt, there was no way to set it aside, and again it is held that he who hath a right, title, interest, debt or demand mere puisne, shall not avoid a fraudulent gift or estate precedent by the common law. It is by these principles of the common law that the case before us is to be tested; for the statutes made in aid thereof only apply to creditors and purchasers.” And this court held in the case of Meux v. Anthony et al., 6 Eng. 411, that one who would set aside a deed as fraudulent, must show that he has legal existing rights, that they are affected by such fraudulent contract, and that the contract is in fact fraudulent, citing 1 Mun. 196, ib. 281, 4 ib. 581. 2 J. R. 283, 4 ib. 671, 682, 687. So that we may safely say that it is not sufficient that there are remote, possible, contingent rights, which may be affected by the transfer; but there must also be existing vested rights or interest in the property conveyed. The estate conveyed by deed in this ease was slaves which came to the grantor by marriage with the complainant. There can be no doubt but that the husband’s title to the slaves thus acquired was as absolute and perfect as if held by purchase, and consequently his right to sell them the same. The wife had no other or greater interest in them than in any other slaves owned by the husband.' And here the inquiry arises, what was that interest ? Is it possible that an unqualified, unlimited estate can exist in one, and another or lesser estate exist in another at the same time ? Unquestionably not, for the former covers every interest, and there is none left to be held. The complainant therefore had no vested present interest in the slaves. The interest which she claims is a dower interest, not existing, yet dormant during the life of the husband, as in the case of real estate, but dower in such property as he may be possessed of at the time of his death. Place this shadow of title upon the most favorable grounds then, and it is a right dependent upon a contingency, that is, if the husband should die possessed of the property the law will confer an interest. Under this view of the case, fully sustained by the authorities already cited, we have no hesitation in saying that even if these deeds were affected with fraud, the complainant had no such existing vested rights in the property as to entitle her to be heard upon an application to set them aside. We are, however, by no means prepared to say tbat the facts in this case show it to be fraudulent. It is quite evident that much importance has been attached to the fact that the slaves conveyed by the husband came to him by marriage with the wl!o, cud that Ilia a Pie;- disposition of them was esteemed au infringement of the rights of tbs wife Such, we have shown, is not the case. Her rights were no greater in these slaves than in any others owned by the husband, whether held by purchase or otherwise. Nor is there the hardship in this rule by which the husband acquires title to the personal property of the wife by marriage, which is supposed to exist; for whilst the husband acquires title to the personal property, he becomes liable for the wife's debts, and she at the same time acquires a life estate in dower to all of his lands then held, or which may be thereafter acquired. So, that whether the one or the other is the gainer in a pecuniary point of view, (if that should be considered an inducement for its consummation) must depend upon their circumstances respectively at the time the marriage is consummated. In this instance, so far as we may infer from the facts presented, the wife was certainly gainer. Her estate at that time consisted of 160 acres of land and about •$ 10,000 worth of personal property. The husband, estimating his property at its supposed value at his death, owned about 10,000 acres of land, several improved town lots and about $10,000 worth of personal property. It will at once bo seen that at any fair ordinary value of ibis property, the wife’s dower would equal, if not exceed, the. whole amount of estate which the husband acquired by marriage; and it is quite evident that she has actually received for dower more than the whole value of the slaves so conveyed. It is true that there is no data from which a certain estimate may be made, but enough appears to render it altogether probable that no injustice has been done her; but, on the contrary, that considering her age and the fact that she had no children to provide for, she has quite an ample estate to sustain the most respectable position in society, which it is presumed a lady of her advanced age could desire to occupy. Looking, then, beyond the circumstances of the parties to inducements for perpetrating a fraud upon the rights of the wife, there is no evidence of ill feeling or disrespect between the husband and wife; on the contrary, so far as we may infer from the facts before us, the most perfect harmony and good feeling existed. The deeds were made several years before the husband’s death. It was altogether natural and proper that the father, in advanced life, should provide for his children. The amount given, in view of the number of children, and the amount of estate was quite reasonable, and the fact that the property was in Arkansas, the residence of part of his children and remote from his own, at once suggests the propriety as a matter of convenience of selecting it in preference to other property. These circumstances are susceptible of a construction favorable to the honest intentions of the grantor, and should be so considered in the absence of countervailing circumstances connected with them. Of this class there is one which does not well harmonize with the avowed intent of the grantor. It is in the reservation of the use of the slaves during his life. This is not altogether reconcilable with the idea that he desired to advance the interest of his children, a portion of whom may well be supposed to desire the use of the property, and the residue of the children too young to take charge of it. In this respect, the deed partakes of the nature of a will. It suspends the use of the property until the death of the donor. Ill health, advanced age, dislike to the wife, the amount conveyed and other like circumstances, when connected with this reservation of the property until death, would have gone far to fix upon the husband the design to substitute this instrument for a will; but such is not the case in this instance. On the contrary, with the exception of this reservation of use in the deed, the facts are all reconcilable with the general avowed purpose of the deed, and must be so considered by us. Wherefore we are of opinion that the evidence is not sufficient to sustain the allegation of fraud. Had this, however, been otherwise, and a fixed and avowed determination on the part of the husband to defeat the widow’s right to dower, there is not wanting high authority for sustaining the validity of the deed; In the case of Lightfoofs Ex v. Calgin and wife, above cited, it appears that Lightfoot, being the owner of a large estate, of advanced age, in bad health, and only a few months before his death, became displeased with his wife, and took counsel as to the most effectual means of placing his property beyond her reach after his death, and thereupon in pursuance of such counsel, conveyed by deed in trust for the benefit of his children by a former wife, 75 slaves, and all of his other personal estate including money and debts, reserving to himself the possession and use thereof during his life. In this case it will be seen that the motives, the declarations, the circumstances and the act, all tended to fix upon the grantor the intention to cut off the widow, yet the court of appeals of Virginia, after a thorough investigation of the subject, held the deed valid. It is unnecessary, in the case before us, to press the inquiry further, or to decide whether a deed evidently intended to take the place of a will manifestly unjust to the wife should or not be set aside. It is sufficient to say that such is not the state of case before us. The decision of the Hempstead Circuit Court must in all things be affirmed.